1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT TACOMA

UNITED STATES for the use and benefit
of PURCELL P&C, LLC; and PURCELL
P&C, LLC, a Washington Corporation,

            Plaintiffs,

    v.

TOLTEST INC., an Ohio corporation; and
FIDELITY AND DEPOSIT COMPANY
OF MARYLAND, a Maryland
Corporation,

            Defendants.

CASE NO. C12-5234 BHS

ORDER GRANTING
DEFENDANTS' MOTION
TO DISMISS

16

17

18

19

20

21

22

        This matter comes before the Court on TolTest, Inc. ("TolTest") and Fidelity and

Deposit Company of Maryland's ("Fidelity") timely motion to dismiss for lack of

personal jurisdiction and improper venue pursuant to 12(b)(2) and 12(b)(3) or pursuant to

28 U.S.C. §1406(a), or, in the alternative, transfer pursuant to 28 U.S.C. § 1406(a). Dkt.

12.  The Court has considered the pleadings filed in support of and in opposition to the

motion and the remainder of the file.  For the reasons stated herein, the Court grants the

ORDER - 1

1  motion to dismiss for lack of venue on both the breach of contract claim and the Miller

2  Act claim.

3  ### I.  PROCEDURAL HISTORY

4      On March 15, 2012, Purcell P&C, LLC ("PPC") filed a complaint against TolTest

5  and Fidelity, alleging breach of contract and violation of the Miller Act.  Dkt. 1.  On

6  April 12, 2012, TolTest and Fidelity filed the instant motion to dismiss for lack of

7  personal jurisdiction and improper venue pursuant to Fed. R. Civ. P. 12(b)(2) and

8  12(b)(3) or 28 U.S.C. §1406(a), or to transfer pursuant to 28 U.S.C. §1406(a).  Dkt. 12.

9  On April 30, 2012, PPC filed a response brief in opposition to TolTest and Fidelity's

10  motion.  Dkt. 18.  On May 4, 2012, TolTest and Fidelity replied.  Dkt. 19.

11  ### II.  BACKGROUND

12      In October 2009, the Navy issued TolTest task order EJG5 to Contract N62473-

13  06-D-1003 ("Prime Contract") to repair underground fuel storage tanks at the jobsite

14  FISC Manchester, WA ("Project"). Dkt. 13 at 2, Declaration of Donna Fisher, TolTest

15  contract administrator ("Fisher Decl.").  FISC Manchester refers to the "United States

16  Navy facility known as Fleet and Industrial Supply Center Puget Sound located near

17  Manchester in Kitsap County, Washington."  Dkt. 17 at 2 (Purcell Decl.).

18      According to TolTest, before being awarded the Prime Contract, it solicited bids to

19  perform a portion of the work that had been included in the Prime Contract, including

20  sandblasting and recoating of the underground fuel storage.  *Id*. at 2.  To assist

21  prospective bidders in formulating their bids, TolTest created an internet-based plan site,

22  on which TolTest posted, among other documents, a subcontract.  *Id*.  Thus, all potential

1   bidders had an opportunity to review, understand and discuss with TolTest all terms and

2   conditions on which TolTest was proposing to do business. *Id*. As one of the bidders on

3   the Project, PPC was given access to TolTest's plan site. *Id*. PPC does not dispute these

4   facts.

5       On November 10, 2010, TolTest advised PPC that it was awarded the subcontract.

6   *Id*. at 2. The subcontract was embodied in the Purchase Order P005309A and other

7   documents attached to the Purchase Order (collectively, the "Subcontract"), each of

8   which was specifically made a part of the parties' agreement, including the terms and

9   conditions that were to govern the parties' relationship. *Id*. at 2. The terms and

10  conditions contained a forum selection clause. Dkt. 13-1 at 30 (Subcontract). The

11  executed Subcontract, dated November 30, 2010, bears the signature of Dave Purcell,

12  PPC's President. *Id*. at 11. The Subcontract's terms and conditions were also signed by

13  Mr. Purcell.[1] *Id*. at 34.

14      The work to be performed pursuant to the Subcontract included sandblasting and

15  painting four out of six underground storage tanks at the U.S. Navy facility FISC located

16  near Manchester in Kitsap County, Washington. Dkt. 17 at 2 (Purcell Decl.). One

17  hundred percent of the work was to be performed at the Navy's FISC Manchester facility

18  in Kitsap County. *Id*.

19  

20      [1]PPC entered into three other purchase order agreements which had the same forum-

21  selection clause that the Subcontract at issue contains. Dkt. 13 at 3-5, Declaration of Donna
    Fisher, Toltest's Contract Administrator, ("Fisher Decl.") and 13-2. PCC has never objected to
    this provision. *Id*. However, PPC did insist that another provision be revised in one of these

22  three Terms and Conditions it signed. Dkt. 13 at 5. PCC does not dispute these statements.

1    TolTest's surety, Fidelity, provided the Miller Act bond ("Bond"), Number

2    8988071, for the purposes of the Project.  Dkt. 13 at 4 ("Fisher Decl.") and 13-4 at 26-28

3    (Bond).  Execution of the Bond is necessary under the Miller Act "for the protection of

4    persons supplying labor and material."  Dkt. 13-4 at 29.  By the Bond's terms, TolTest

5    and Fidelity bind themselves "jointly and severally" to the United States for a penal sum

6    in an amount they specifically indicated.  *Id*. at 28.   Had the parties indicated no penal

7    sum in the Bond, TolTest and Fidelity could be liable up to the amount listed under

8    "liability limit."  *Id*.  Neither the Bond nor the Prime Contract contain a forum selection

9    clause, nor do they explicitly incorporate by reference the terms of any subcontracts

10   entered into by TolTest.

11       In January 2011, PPC began providing labor, materials and services under the

12   Subcontract.  Dkt. 17 at 3 (Purcell Decl.).  According to PPC, on or about September 19,

13   2011, TolTest sent PPC a letter terminating the Subcontract and instructing PPC to

14   immediately stop work, without allegedly providing PPC sufficient notice and

15   opportunity to cure.  *Id*.  At that time, PPC alleges that it was owed approximately

16   $888,000 for labor and materials it had provided on the Project, for which it had not been

17   paid.  *Id*.  PPC further alleges they repeatedly contacted TolTest seeking an explanation

18   as to why it terminated the Subcontract.

19       According to TolTest's contract administrator, Donna Fisher, the Subcontract with

20   Purcell was terminated due to safety issues and PPC's deficient work.  Dkt. 13 at 3

21   (Fisher Decl.).  In a letter dated January 11, 2012, TolTest elaborated on the reasons for

22   terminating the contract, focusing primarily on the fact that the termination of the

1   Subcontract was a "culmination of numerous complaints and warnings about Purcell's

2   insufficient performance and disregard for safety considerations over an extended period

3   of time."   Dkt. 17-2 at 51-53 (TolTest Letter to PPC's bond company).   Per the same

4   letter, on September 14, 2011, "[m]any of [PPC's] [performance] issues came to a head"

5   when the Navy inspected the site, finding numerous deficiencies.  *Id.* at 52-53. On

6   September 15, 2011, a government inspector found a cigarette butt in one of the tanks

7   near blast material, concluding that PPC's defects could not be remediated.  *Id.* at 53.

8   The following day, September 16, 2011, the Navy pulled PPC's site passes, determining

9   in part that their defects could not be cured per Section 8.2 of the terms and conditions.

10   *Id.*  TolTest maintains that during this period it provided PPC with notice of its

11   deficiencies, but it did not receive PPC's plan to cure.  *Id.*

12                            **III.  DISCUSSION**

13          PPC's complaint contains two claims: one for breach of contract and the other for

14   violation of the Miller Act.  TolTest and Fidelity seek dismissal of both claims for lack of

15   venue pursuant to 12(b)(3) and personal jurisdiction pursuant to 12(b)(2) or 28 U.S.C.

16   1406(a), or transfer pursuant to §1406(a) to the District Court for the Northern District of

17   Ohio.

18          TolTest and Fidelity argue that the forum selection clause in the Subcontract is a

19   valid and enforceable clause to which two sophisticated commercial parties agreed, and

20   PPC cannot ignore it.  With regard to the Miller Act claim, TolTest and Fidelity contend

21   that Fidelity, as surety, can step into the shoes of the principal, TolTest, and enforce the

22

1   venue provision of the Subcontract on the Miller Act claim, even though Fidelity was not

2   a signatory to the Subcontract.

3        PPC argues that the venue provision of the Miller Act claim controls, and thus the

4   suit was properly filed in this district.  PPC maintains that it brought the breach of

5   contract claim in this district in the interest of judicial efficiency and economy. PPC

6   claims venue is proper in this district because it is independently supported by federal

7   case law regarding 28 U.S.C. §1404(a).  PPC disputes that Fidelity, as surety, may step

8   into the shoes of TolTest and enforce the venue provision of the Subcontract on the

9   Miller Act claim. However, PPC argues in the alternative, that if the Court provides

10  TolTest and Fidelity with any relief, it should be with regard to the breach of contract

11  claim.

12  **A.    Venue for Breach of Contract Claim**

13       In the context of a 12(b)(3) motion based on a forum selection clause, a court must

14  draw all reasonable inferences in favor of the non-moving party and resolve all factual

15  conflicts in favor of the non-moving party.  *Murphy v. Schneider Nat'l, Inc.*, 362 F.3d

16  1133, 1138 (9th Cir. 2004). However, the pleadings need not be accepted as true, and the

17  court may consider facts outside the pleadings.  *Id.* at 1137.

18       Forum selection clauses are presumptively valid.  *Id.* at 1140.  The U.S. Supreme

19  Court and lower federal courts have consistently recognized contracting parties' freedom

20  to bind themselves to a chosen forum for the resolution of any disputes that may later

21  arise.  *See, e.g., Carnival Cruise Lines v. Shute*, 111 S. Ct. 1522, 1528-29 (1991).

22

1    The party challenging the clause bears a "heavy burden of proof" and must

2  "clearly show that enforcement would be unreasonable and unjust." *M/S Bremen v.*

3  *Zapata Off-Shore Co.,* 92 S. Ct. 1907, 1916 (1972) (citations omitted).  A forum selection

4  clause may be unreasonable "(1) if the inclusion of the clause in the agreement was the

5  product of fraud or overreaching; (2) if the party wishing to repudiate the clause would

6  effectively be deprived of his day in court were the clause enforced; and (3) if the

7  enforcement would contravene strong public policy of the forum in which the suit is

8  brought.  *Murphy*, 362 F.3d. at 1140.  Federal courts apply federal law when determining

9  the enforceability of a forum selection clause.  *See Manetti-Farrow, Inc. v. Gucci Am.,*

10  *Inc.,* 858 F.2d 509, 513 (9th Cir.1988).

### 1.    The Subcontract's Forum Selection Clause

12    The provision from the Subcontract at the heart of the current dispute reads in full:

13         §20.1  The validity, interpretation, and performance of this
Subcontract and the Purchase Order and all other Contract Documents shall
14    be governed, construed and interpreted in accordance with the laws of Ohio
without regard to its law regarding conflict or choice of laws and each of
15    the Parties (and their sureties, if any bond is provided) waives any and all
objection which it may have based on improper venue or forum non
16    conveniens to the conduct of any such action or proceeding in such court.
Subcontractor and TolTest agree to submit to the exclusive jurisdiction and
17    venue of any Federal, state, or local court, having a situs within the state of
Ohio with respect to any dispute, claim or suit, whether directly or
18    indirectly arising out of or relating to this Subcontract or the obligations of
either party hereunder.

20  Dkt. 13-1 at 30.  This provision sets out the governing law (Ohio law) for potential

21  disputes, claims or suits arising directly or indirectly or relating to the Subcontract.  It

22  also waives "any and all objections which it may have based on forum non-conveniens."

Dkt. 13-1 at 30.  Additionally, it establishes the possible fora (federal, state or local courts of Ohio) where such disputes, claims or suits may be adjudicated.  If any provision of the Subcontract were rendered invalid, the following severability clause would save the Subcontract from being void:

> §20.2  The partial or complete invalidity of any one or more provisions of this Subcontract shall not affect the validity of continuing force and effect of any other provision.

Dkt. 13-1 at 30.

The forum selection clause in the Subcontract is entitled to presumptive validity. However, as articulated above, that does not end our inquiry regarding whether the clause is enforceable.  The clause may be unreasonable if the non-moving party meets the "heavy burden" of demonstrating that at least one of three of the following conditions are satisfied. *Murphy*, 362 F.3d. at 1140. In this case, none of the conditions are satisfied.

### a.        Evidence of Fraud or Overreaching

There is no evidence of fraud or overreaching in the procurement of PPC's signature on the Subcontract's terms and conditions, which contains the forum selection clause at issue.  PPC does not argue that TolTest perpetrated fraud[2], so the Court does not address that as an issue.  However, PPC does argue that TolTest was "overreaching."

---

[2]The party seeking to invalidate a [forum selection clause] must show that the clause itself was fraudulently included in the agreement. *See Batchelder v. Kawamato,* 147 F.3d 915, 919 (9th Cir. 1998).  To prove fraud in a contract, a party must meet the high bar of showing an intent to mislead by the accused party.  *See* Restatement (Second) of Contracts § 162 (1981).

1  Overreaching involves actions that fall short of fraud and can vitiate the validity of a

2  forum selection clause.  *See Murphy*, 362 F.3d at 1141.

3       PPC alleges that the venue provision of the Subcontract was "not negotiated" but

4  rather was "a form contract," which "cannot trump convenience and fairness." Dkt. 18 at

5  20-21.   However, the fact that an agreement is a form contract does not render its terms

6  fraudulent or the product of overreaching.  *Carnival Cruise*, 111 S. Ct. at 1528-29.

7       In *Murphy,* the Ninth Circuit held that allegations of unequal bargaining power

8  between parties and of a contract being nonnegotiable are insufficient to prove

9  overreaching.  362 F.3d at 1141.  In that case, the plaintiff, Murphy, was an employee of

10  defendant Schneider National, Inc. ("Schneider"). *Id*. at 1136. While working as a long-

11  haul truck driver, he was injured on premises owned by defendant Trane Company

12  ("Trane"). *Id*. Murphy filed a personal injury accident against Schneider and Trane in the

13  United States District Court for the District of Oregon, based on diversity jurisdiction.

14  Schneider filed a motion to dismiss for improper venue, asserting that venue was proper

15  only in Wisconsin State Court because of the forum selection clause in Murphy's

16  employment contract with Schneider.  *Id*.

17       Murphy had not been formally educated beyond the tenth grade. When he first

18  signed the employment contract with Schneider, two months after he began working

19  there, he was told the terms of the contract were not negotiable and that he was required

20  to sign the contract if he wanted to work for Schneider.  *Id*. In subsequent years, Murphy

21  signed a contract for employment with the same forum selection clause. *Id*.

22

1    The appellate court found Murphy's factual allegations of overreaching were

2  insufficient to evade the consequences of his forum selection clause. *Id.* at 1141.

3  Murphy's evidence, even if accepted as true, is not enough to overcome the strong

4  presumption in favor of enforcing the forum selection clause.  *Id.* (*citing Carnival Cruise*

5  *Lines, Inc. v. Shute*, 111 S. Ct. 1522 (a differential in power or education on a non-

6  negotiated contract will not vitiate a forum selection clause).  The *Murphy* Court found

7  insufficient evidence of overreaching and that the employee could have sought work with

8  another employer if he opposed the nonnegotiable forum selection clause. *Id.*

9    In this case, the parties arguably had far more comparable, if not equal, bargaining

10  power than the parties in *Murphy*, and here no evidence exists that the venue provision in

11  the form was patently non-negotiable, only that it "was not negotiated." Dkt. 18 at 24.

12  Here, two sophisticated corporate parties agreed to have any and all disputes, claims or

13  suits arising out of the Subcontract adjudicated in Ohio.  Based on uncontroverted facts,

14  PPC as well as any other subcontractors bidding on the Project had a full and fair

15  opportunity to review all documents related to the Project, including the terms and

16  conditions in § 20.1, on TolTest's Project website.  Potential subcontractors were also

17  permitted to ask any questions of TolTest before submitting a bid.

18    Additionally, before and after the parties entered into the Subcontract at issue

19  here, both parties entered into purchase order agreements with one another, which

20  contained the same forum selection clause that is the subject of this motion.  Based on

21  undisputed evidence, PPC did not attempt to negotiate a change to the venue provision in

22  any of them.  However, in one subcontract, PPC did negotiate the change of another

provision.  These facts demonstrate at least three relevant pieces of information for the Court's consideration: (1) PPC has voluntarily entered contracts with TolTest and has an awareness of its standard terms and conditions; (2) it could have exercised its bargaining power to attempt to negotiate a different venue provision, but it did not; and (3) even if the clause was non-negotiable and PPC did not like the venue provision, it could have sought work under other subcontracts containing more satisfactory terms and conditions.

Based on the foregoing analysis, the Court concludes that PPC failed to provide sufficient evidence to show that TolTest's inclusion of the forum selection clause constitutes overreaching such as to render it unenforceable.

### b.    Deprivation of PPC's Day in Court

Enforcement of a forum selection clause would be unreasonable if enforcement would effectively deny the party seeking to repudiate the clause from a day in court. *Murphy*, 362 F.3d at 1141 (citations omitted).

PPC does not directly argue that it will be deprived of its day in court if the matter were adjudicated in Ohio.  Instead, PPC makes a 28 U.S.C. §1404(a) forum non-conveniens argument in an attempt to show that seven of the nine factors, which guide courts in exercising their discretion in deciding motions to transfer under that statute, weigh in PPC's favor of maintaining venue in this district.  PPC's reliance on the Ninth Circuit's §1404(a) test is inapposite to this motion: (1) PPC's §1404(a) argument is really about convenience of forum, not deprivation of a party's day in court; and (2) the

1    argument based on §1404(a) involves circular reasoning that provides no support for the

2    Plaintiffs' case. [3]

3           Nonetheless, the Court will consider PPC's factors argument to the extent it

4    addresses whether or not PPC will be deprived of its day in court, were the breach of

5    contract action adjudicated in an Ohio court, as the forum selection clause requires.

6           PPC contends that the "relative cost" of adjudicating a dispute in Washington

7    verses Ohio strongly favors adjudicating the dispute in this court.  Dkt. 18 at 21.  In

8    support of this argument, PPC contends that 50-60 persons, most of whom are not

9    employees of PPC, had access to the tank on which it was working during the time period

10   leading up to the cigarette butt incident, which PPC contends will be a "central issue[]" in

11   the breach of contract claim.  Dkt. 17 at 4 (Purcell Decl.).  From this, PPC argues that

12   "transportation and residency costs associated with moving all the Plaintiff's witnesses to

13   Ohio [will be] significant."  Dkt. 18 at 21.

14          While neither TolTest nor Fidelity dispute PPCs statements, there are no sworn

15   statements indicating the approximate amounts that PPC would incur as a result of

16   litigating in Ohio rather than this forum.  Further, the Court has no way of knowing if the

17

18

19          [3]28 U.S.C. §1404(a) reads: "For the convenience of parties and witnesses, in the interest of

20   justice, a district court may transfer any civil action to any other district or division *where it might have been brought* or to any district or division to which all parties have consented"

21   (emphasis added).  Because the plain language of §1404(a) requires that the claim "might have been brought" in another forum, PCC simply assumes what it is trying to prove, *i.e.* that the

22   breach of contract claim could have been brought in this court, despite the forum selection clause in the Subcontract.

1   financial impact of adjudicating the dispute in Ohio would be so heavy that the costs

2   would effectively deprive the corporation of its day in court.

3       Taking PPC's statement as true and finding that the "relative cost" of adjudicating

4   a dispute in Washington verses Ohio strongly favors adjudication here may be enough to

5   satisfy the forum non-conveniens test.  However, without more, PPC has not met the

6   "heavy burden" of demonstrating that the cost of litigating the breach of contract claim in

7   Ohio will effectively deprive PPC of its day in court.

8       Additionally, PPC argues that its "ability to compel testimony from non-party

9   witnesses is also a significant factor favoring local venue."  Dkt. 18 at 21.  According to

10  Purcell, "approximately 40 current and former Navy Civilian employees work at FISC

11  Manchester, current and former Purcell employees and employees of other subcontractors

12  and suppliers working on the Project . . . ."  Dkt. 14 at 4 (Purcell Decl.).  "Given that they

13  worked at the FSC Manchester facility or for local companies, it is likely that most of

14  these individuals reside and/or work in Kitsap County or in nearby communities in

15  Western Washington."  *Id.*  Further, PPC states most of these individuals "do not work

16  for Purcell."  *Id.*  Based on those contentions, PPC argues that "pursuant to [Fed. R. of

17  Civ. P.] 45, those witnesses could be compelled to attend deposition or trial in this

18  district, but they could not be compelled to travel to Ohio for the same."  Dkt. 18 at 22.

19  PPC's inability to compel non-party witness testimony, it argues, "would severely

20  prejudice Purcell's ability to present its case."  *Id.*

21      TolTest and Fidelity do not dispute PPC's factual assertion regarding their

22  inability to call non-party witnesses.  Instead, they argue, in a footnote, that "to the extent

§1404(a) could apply, Plaintiff, in the venue-selection provision at issue, expressly waived any 'forum-non conveniens' objections and thus can hardly be heard to argue that litigating in Ohio would be inconvenient."[4]  Dkt. 19 at 12 n.10.

The Court finds PPC's Fed. R. Civ. P. 45 argument rather cursory.  Although PPC may have established that an Ohio forum is inconvenient for distantly located non-party witnesses, it has not fully explored the contours of Rule 45, which indeed may require such witnesses to appear at trial, upon PPC's proper showing.  Specifically, Rule 45(3)(C) states:

> (C)  *Specifying Conditions as an Alternative.*   In the circumstances described in Rule 45(c)(3)(B), the court may, instead of quashing or modifying a subpoena, order appearance or production under specified conditions if the serving party:
> (i) shows a substantial need for the testimony or material that cannot be otherwise met without undue hardship; and
> (ii) ensures that the subpoenaed person will be reasonably compensated.

The "circumstances described in Rule 45(c)(3)(B)" include "a person who is neither a party nor a party's officer to incur substantial expense to travel more than 100 miles to

---

[4]Section 20.1 of the Subcontract contains an express waiver regarding objections based on improper venue or forum non-conveniens, a fact which PCC does not address, focusing only on the last sentence of § 20.1 regarding the forum selection clause.  Dkt. 18 at 6.  Though this waiver provision in and of itself does not render PPC's 1404(a) argument moot to the extent it provides information about whether or not venue in Ohio would constitute a deprivation of PPC's day in court, it has some bearing on the legal effect of the waiver.  In § 20.1, not only did PPC explicitly consent to Ohio law and fora for disputes involving the Subcontract, PPC also explicitly waived any objections based on improper venue or forum non-conveniens, items over which PPC may have attempted to bargain but apparently did not.  Now PPC wants to change that bargain, without even addressing the explicit waiver.  In the absence of some argument from PPC regarding why the waiver provision should be unenforceable, if the Court were to decide the provisions were unenforceable, it would appear to be *sua sponte,* undermining the well-established principle of contract law that parties are to receive the benefit of their bargain.

1  attend trial."  Fed. R. Civ. P. 45(c)(3)(B)(iii).  PPC fails to explore these two sections of

2  Rule 45.  Instead, it discusses Rule 45 generally, claiming it bars PPC from "calling

3  [certain distantly located] witnesses at trial."  Dkt. 18 at 22.  However, according to

4  45(c)(3)(C), upon proper showing of "substantial need" and assurances, the distantly

5  located party "will be reasonably compensated."  Rule 45 permits the Court to order

6  appearance of witnesses who are "neither a party nor a party officer" and who have to

7  travel in excess of  "100 miles to attend trial."  Fed. R. Civ. P. 45(c)(3)(b)(iii) and

8  45(c)(3)(C).

9         Based on the information before it, the Court finds that PPC arguably has met its

10  burden of showing an Ohio forum is inconvenient, but it has not met its heavy burden of

11  proving that it will effectively be deprived of its day in court.

### c.   Contravention of Public Policy of the Forum in Which the Suit is Brought

13         A forum selection clause should be declared unreasonable if it violates a strong

14  public policy of the forum in which it is brought, whether that policy is declared by

15  statute or judicial decision.  *M/S Bremen* , 92 S. Ct. at 1916.

16         PPC does not identify any public policy with citation to any case law or statutes,

17  which prohibit adjudication of this dispute in the location where it contracted to have

18  disputes resolved, Ohio.

19         PPC has not met its burden of demonstrating that adjudicating this dispute in Ohio

20  would be in contravention of public policy.

21

22

### 2. Conclusion as to Breach of Contract Claim

While PPC had only to meet its burden of demonstrating only one of the three conditions listed above, it failed to satisfy its burden. The Court dismisses the breach of contract claim for lack of venue pursuant to Fed. R. Civ. P. 12(b)(3). PPC may file its breach of contract claim in Ohio pursuant to the valid and enforceable venue selection provision of the Subcontract, Terms and Conditions § 20.1.

### B. Miller Act Claim and Venue Provision

In apparent contrast to the choice of law and forum selection clause in the Subcontract, the Miller Act requires that claims brought under the Act be filed in the district where the work on the bonded project was to be performed. Specifically, under the Miller Act's venue provision, 40 U.S.C. §3133(b)(3) (*formerly* 40 U.S.C. §207c) reads:

> (3) Venue.--A civil action brought under this subsection must be brought--
> (A) in the name of the United States for the use of the person bringing the action; and
> (B) in the United States District Court for any district in which the contract was to be performed and executed, regardless of the amount in controversy.

### 1. Forum Selection Clause in the Subcontract and the Miller Act Venue Provision

TolTest and Fidelity argue that the forum selection clause in the Subcontract governs in the present case despite the venue-selection provision of the Miller Act. Dkt. 12 at 10. They maintain that "contracting parties can agree to avoid the forum that the statutory provision would otherwise dictate." *Id.* To that end, TolTest and Fidelity cite

1  four cases from other circuits standing for the proposition that a forum selection clause

2  can supersede the venue requirements of the Miller Act.[5]  In addition, TolTest cites

3  several other district court cases, outside of the Ninth Circuit, that stand for the same or

4  similar proposition. *See* Dkt. 12 at 12.

5        While the Ninth Circuit Court of Appeals has not squarely addressed this issue, the

6  Court is persuaded by the rationale from other circuits and cited by TolTest and Fidelity

7  that a valid forum selection clause may supersede the venue provision of the Miller Act.

8  The Court adopts the Tenth Circuit's reasoning when it addressed the same issue as a

9  matter of first impression:

10        Although the language of the Miller Act, 40 U.S.C. § 270b(b),
        requiring that suits be brought in the judicial district where the contract was
11        performed "and not elsewhere" seems to mandate strict conformance,
        judicial interpretation holds otherwise. While dealing   with the merits of
12        another issue, the Supreme Court characterized § 270b(b) as being "merely
        a venue requirement." *F.D. Rich Co. v.United States ex rel. Industrial
13        Lumber Co.,* 417 U.S. 116, 125, 94 S.Ct. 2157, 2163, 40 L.Ed.2d 703
        (1974). In *United States ex rel. Pittsburgh Tank & Tower, Inc. v. G & C
14        Enterprises, Inc.,* 62 F.3d 35, 36 (1st Cir.1995), the court held a contractual
        forum selection clause prevailed when it conflicted with the venue
15        designated by the Miller Act. The *G & C Enterprises* court noted that even
        though the Supreme Court was not addressing a conflicting forum selection

16  _____

17        [5]*United States ex rel. B&D Mech.Contractors, Inc. v. St. Paul Mercury Ins. Co.*, 70 F.3d
   1115, 1117 (10th Cir. 1995), *cert. denied*, 517 U.S. 1167 (1996) ("We are persuaded by our
18  sister circuits and agree that a valid forum selection clause supersedes the Miller Act's venue
   provision"); *United States ex rel. Pittsburgh Tank & Tower v. G & C Enter*s., 62 F.3d 35, 36-37
19  (1st Cir. 1995) (per curiam) (affirming dismissal of Miller Act claim filed in district court in
   Maine where forum-selection clause required litigation in New Jersey, even though the project
20  that was the subject of a subcontract was located in Maine); *FGS Constructors, Inc. v. Carlow*,
   64 F.3d 1230, 1233 (8th Cir. 1995) (holding that a forum-selection clause overrides the Miller
21  Act's venue requirements); *In re Fireman's Fund Ins. Cos.,* 588 F.2d 93 (5th Cir. 1979)
   (affirming district court's order to transfer case from district court in Louisiana to district court in
22  New Jersey, as stipulated in the forum-selection clause, even though project was located in
   Louisiana).

1   clause in *F.D. Rich,* the Court's designation that the statutory language was
a mere venue requirement was "explicit and very hard for a lower federal

2   court to ignore." *Id.* at 36. This court also finds such a designation hard to
ignore. Interestingly, even prior to the *F.D. Rich* decision, courts deciding

3   the issue had held almost without exception that the provision was a venue
requirement. *United States ex rel. Capolino Sons, Inc. v. Electronic &*

4   *Missile Facilities, Inc.,* 364 F.2d 705, 707 (2d Cir.), *cert. denied,* 385 U.S.
924, 87 S.Ct. 239, 17 L.Ed. 2d 148 (1966).  It is well settled that venue

5   provisions are subject to contractual waiver. *National Equip. Rental, Ltd. v.*
*Szukhent,* 375 U.S. 311, 315, 84 S.Ct. 411, 414, 11 L.Ed.2d 354 (1964).

6          Three circuits have addressed forum selection clauses that conflict
with the Miller Act's venue provisions. All three have held that as a mere

7   venue requirement, § 270b(b) is subject to contractual waiver by a valid
forum selection clause. *See FGS Constructors, Inc. v. Carlow,* 64 F.3d

8   1230, 1233 (8th Cir.1995) (holding the Miller Act's venue requirement
could be waived by defendants); *G & C Enterprises,* 62 F.3d at 36; *In re*

9   *Fireman's Fund Ins. Cos.,* 588 F.2d 93, 95 (5th Cir.1979) (holding the case
for overriding the Miller Act particularly  strong where forum selection

10  clause was suggested by defendants-the parties the act was designed to
protect).

11

12  *United States for the use and benefit of B&D Mechanical Contractors, Inc v. St. Paul*

13  *Mercy Insurance Co., et. al*., 70 F.3d at 1117.

14         This Court adopts the reasoning and determination of the Tenth Circuit that a valid

15  forum selection clause supersedes the Miller Act's venue provision.

16             **a.      United States Not A Real Party In Interest**

17         Instead of attempting to distinguish any of the circuit courts of appeal cases cited

18  by TolTest and Fidelity, PPC responds that the forum selection clause in the contract

19  does not warrant dismissal or transfer because neither the United States nor Fidelity

20  signed the Subcontract; therefore, it cannot be binding on them.  Dkt. 18 at 10.  In doing

21  so, PPC argues that the United States is a real party in interest, rather than a "nominal" or

22  "formal" party.  *Id*. at 11-12.  Therefore, according to PPC, "dispute resolution provisions

1   in underlying subcontracts are not binding on the parties to a Miller Act claim (i.e. the

2   United States and the Miller Act Bond surety)."  *Id.* at 11.

3        In response, TolTest and Fidelity argue, in part, that the United States is not a real

4   party in interest, but rather a nominal party.  Dkt. 19 at 10.  The Court agrees.

5        As TolTest and Fidelity point out, the Ninth Circuit Court of Appeals has referred

6   to the United States as a "nominal" party that has "no actual financial interest" in the

7   outcome of a Miller Act case.  *United States of America, ex rel. Don Haycock v. Hughes*

8   *Aircraft Co.,* 98 F.3d 1100, 1102 (9th Cir. 1996).  This description is consistent with

9   cases outside the Ninth Circuit holding that the United States is not a real party in interest

10  under the Miller Act. *United States for Use of Mutual Metal Mfg. Co.v. Briggs, et al.*, 46

11  F. Supp. 9, 11 (1942) (United States is merely nominal party plaintiff under the Miller

12  Act and "has no actual pecuniary interest"); *United States for Use of Canion v. Odell*

13  *Geer Construction, et al.,* 817 F. 2d 1188, 1191 (5th Cir. 1987) ("Under the Miller Act,

14  the United States is a nominal party; it is not entitled to notice of suit, it need not appear

15  with counsel, it bears no costs, and it cannot be held liable").

16       Courts have repeatedly recognized that the United States has nominal status as a

17  party in Miller Act cases.  As noted by TolTest and Fidelity, the United States Court of

18  Federal Claims in *Westerchil Construction Co., Inc, v. the United States,*16 Cl. Ct. 727

19  (1989), explained how the United States can be considered a nominal party:

20          The Miller Act requires that suits under the Act be brought in the name of
        the United States, so as to expand service of process and jurisdiction

21

22

1  nationwide. 40 U.S.C. § 270b(b) (1982)[6]. The United States, however, is
2  not entitled to notice of suit in such actions; it need not appear with
   counsel, it bears no costs, and it cannot be held liable. *See United States v.*
3  *Randall & Blake,* 817 F.2d 1188, 1191 (5th Cir.1987). Unless the official
   party in whose name the action was brought or defended has some
   participatory or supervisory authority in the action, he cannot be included in
4  the judgment.

5  16 Cl. Ct. at 732.  Additionally, in *Westerchil,* the court determined that a party may be a

6  real party in interest if it engaged counsel, received notice and actively defended its

7  position.  *Id.* at 732.  It found, albeit for the purposes of deciding a collateral estoppel

8  issue, not a venue issue, even though "the United States was required to become a

9  captioned party to the suit," "its involvement ended there." *Id.*

10      In the instant case, there is no evidence that the United States has had any

11  "participatory or supervisory authority over," and no vested interest in this case.

12  *Westerchil*, 16 Cl. Ct. at 732.  Otherwise put, there is no evidence that the "United States

13  has taken any role in this litigation, much less an active role."  Dkt. 19 at 11.  As TolTest

14  and Fidelity argue, PPC alone has driven its prosecution; PPC alone has the pecuniary

15  interest in this law suit; and PPC alone will be included in the judgment.  *Id.*

16      The Court finds that TolTest and Fidelity's reasoning is based on sound persuasive

17  authority and that the United States is a nominal party to the Miller Act claim in this case.

18          **b.    Surety Can Stand in the Shoes of the Principal**

19      The resolution of the whether or not Fidelity, as a non-signatory to the

20  Subcontract, can rely on its venue selection provision depends upon whether Fidelity, as

21  _____

22      [6] 40 U.S.C. § 3133, formerly 40 U.S.C. § 270b; 40 U.S.C. § 270c.

1   surety, can step into the shoes of the principal, TolTest, and seek to enforce a clause in

2   the Subcontract.

3       PPC argues that "Fidelity cannot rely on the general principles of suretyship law to

4   argue that it is entitled to 'step into the shoes' of TolTest and enforce the forum selection

5   clause in the Subcontract."  Dkt. 18 at 12.  Citing *United States for the Use and Benefit of*

6   *Walton Technology, Inc. v. Weststar Engineering, Inc. et. al.*, 290 F.3d 1199 (9th Circuit

7   2002), PPC quotes a portion of the case concluding that "the liability of surety and

8   principal on a Miller Act payment bond is co-extensive with the contractual liability of

9   the principal only to the extent that it is consistent with the rights and obligations created

10  under the Miller Act." *Id*.  Effectively, PPC argues that because the venue provision of

11  the Miller Act conflicts with the forum selection clause in the Subcontract, Fidelity

12  cannot invoke the forum selection clause.

13      PPC's citation does not stand for the proposition that either the general principles

14  of suretyship do not apply to Miller Act claims or that a surety in a Miller Act claim

15  cannot step into the shoes of its principal. *Id*. at 12.  In fact, *Walton* makes clear that the

16  general principles of suretyship law apply to Miller Act cases.  *Walton Technology, Inc*,

17  290 F.3d at 1206 (citing *Am. Cas. Co. of Reading v. Arrow Road Construction Co.*, 309

18  F.2d 923, 924 (9th Cir. 1962).  As PPC does indicate, the surety and principal's liability

19  on the Miller Act bond is co-extensive with the contractual liability of the principal "to

20  the extent they are consistent with the rights and obligations created under the Miller

21  Act."  *Walton Technology, Inc*, 290 F.3d at 1206.

22

1    However, as TolTest and Fidelity argue, the issue in *Walton* did not involve a

2    question of venue or whether a forum selection clause is effective in a Miller Act claim.

3    Dkt. 19 at 9.  In relevant part, the case involved a subcontractor, Walton, who performed

4    its obligations on the Subcontract and waited the requisite ninety days before pursuing its

5    Miller Act claim. 290 F.3d at 1208.  The defendant, the principal, Walton, and the surety,

6    Reliance, tried to avoid liability on the Miller Act payment bond based on the unsatisfied

7    "pay if and when paid [by the Navy]" clause in a settlement agreement, which modified

8    the subcontract.  *Id.* at 1203.  In determining Reliance's liability to Walton, the court

9    concluded that "[where subcontract terms *effect the timing of recovery or the right of*

10   *recovery* under the Miller Act, enforcement of such terms preclude Miller Act liability to

11   contradict the express terms of the Miller Act."  *Id.* at 1207 (emphasis added).[7]

12   In the instant motion, Fidelity's liability is not at issue; neither is the timing of

13   recovery, nor the right to or extent of recovery.  Venue is the issue.  Thus, while  "the

14   liability of surety and principal on a Miller Act payment bond is co-extensive with the

15   contractual liability of the principal only to the extent that it is consistent with the rights

16   and obligations created under the Miller Act," the Court finds *Walton's* limitations on a

17   surety's right to invoke a defense in a subcontract to be limited to cases where

18   substantive rights will be impacted, such as the right to or extent of recovery, or cases

19   where payment on the bond are contingent on another party's payment to the principal.

20

21   [7]This Court interprets the *Walton* court's reference to the subcontract here to include the
     settlement agreement, as it was a modification of the subcontract, which contains the forum
22   selection clause at issue.

1    Therefore, this Court concludes that *Walton* does not support PPC's argument that

2    Fidelity cannot step into the shoes of TolTest. Rather, it supports the Defendants'

3    position that, under the general principles of suretyship law, Fidelity can step into the

4    shoes of the principal and invoke the venue clause of the Subcontract.

5            **2.      Conclusion as to Miller Act Claim**

6            In this case, Fidelity has chosen to step into the shoes of its principal and, with

7    TolTest, move for dismissal based on the forum selection clause in the Subcontract.[8]

8            The Court, therefore, also dismisses the Miller Act claim. Because only federal

9    courts have jurisdiction to hear Miller Act claims, PPC may file its Miller Act claim

10   pursuant to the forum selection clause in the Subcontract, "submit[ing] to the exclusive

11   jurisdiction and venue of any Federal … court having a situs within the state of Ohio."

12   Dkt. 13-1 at 30.

13                           **IV.  ORDER**

14           Therefore, it is hereby **ORDERED** that:

15           1.      TolTest and Fidelity's motion to dismiss PPC's breach of contract claim

16   and Miller Act claim is **GRANTED.** The claims are dismissed without prejudice, and

17   this case is closed.

18   ────────────────

19           [8]As explained in footnote number 2, PPC focuses on the last sentence of the Subcontract
20   § 20.1 in arguing this motion. In doing so, it neglects to address what, if any, impact the clause
     stating "each of the Parties and (*their sureties, if any bond is provided*) waives any and all
21   objection which it may have based on improper venue or forum non-conveniens…" may have on
     its case. Dkt. 13-1 at 30 (emphasis added). The phrase "their sureties" in § 20.1 would surely
22   seem to reference Fidelity, Toltest's surety, thus evidencing an intent to bind Fidelity by the
     terms of the Subcontract.

1    2.    Pursuant to the forum selection clause in the Subcontract, PPC can choose

2  to file its breach of contract claim in any court within Ohio.

3    3.    Pursuant to the forum selection clause in the Subcontract, PPC can choose

4  to file its Miller Act claim in any federal court within Ohio.

5    Dated this 12th day of July, 2012.

6

7

8  BENJAMIN H. SETTLE
United States District Judge

9

10

11

12

13

14

15

16

17

18

19

20

21

22

ORDER - 24